IN THE UNITED STATE DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN, NORTHERN DIVISION

| | |
|---|---|
| JAMES WHEELER, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>NATIVE COMMERCE STUDIOS, LLC, a California Limited Liability Company,<br><br>*Defendant*. | Case No. 2:17-cv-00051 |

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff James Wheeler brings this Class Action Complaint and Demand for Jury Trial against Defendant Native Commerce Studios, LLC ("Native Commerce" or "Defendant") to put an end to its unlawful and deceptive practice of billing consumers without authorization for services that they never purchased. Plaintiff alleges as follows upon personal knowledge as to himself and his own act and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

**NATURE OF THE ACTION**

1. Defendant Native Commerce owns a network of websites and e-commerce stores, each catering to a different niche market. Native Commerce's websites span many topics, including survival preparedness, gardening, craft making, and fashion.

2. Throughout its many websites, Native Commerce entices consumers to purchase its products and redeem purportedly "free" items by paying only shipping and handling. These products, however, serve as a marketing ploy to obtain consumers' payment information.

3. In fact, consumers who purchase any product or redeem a free item from Native Commerce's many websites are automatically and deceptively enrolled into a reoccurring

1

monthly membership. These reoccurring charges were never disclosed to the consumers at anytime during the checkout, as such, these consumers never agreed to any reoccurring fees.

4. As a result, Plaintiff, on behalf of himself and a class of similarly situated individuals, brings this suit against Defendant seeking monetary and injunctive relief for its deceptive and unlawful practice of placing unauthorized charges on consumers' accounts.

## PARTIES

5. Plaintiff James Wheeler is a natural person and citizen of the State of Michigan.

6. Defendant Native Commerce Studios, LLC, is a limited liability company incorporated and existing under the laws of the State of California, with its principal place of business located at 4330 Gaines Ranch Loop, Suite 120, Austin, Texas 78735.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the putative Class is a citizen of a state different from the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (iii) none of the exceptions under the subsection apply to this action.

8. Additionally, this Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the Electronic Funds Transfer Act, 15 U.S.C. § 1693, and Plaintiff's other claims are so related to his claims in this action that they form part of the same case or controversy.

9. This Court has personal jurisdiction over Defendant because it transacts significant business in this District, and the unlawful conduct alleged in this Complaint occurred in and emanated from this District.

10. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial

part of the events giving rise to Plaintiff's claims occurred in this District and Plaintiff resides in this District.

## COMMON FACTUAL ALLEGATIONS

*Brief Overview of Defendant Native Commerce*

11. Defendant Native Commerce is an online media marketing company that creates and develops a vast number of niche websites including a variety of blogs and e-commerce stores. Currently, Native Commerce owns at least 12 brands and purports to be developing 17 more. Current websites include, *inter alia*, Survival Life (survivallife.com), DIY Projects (diyprojects.com), Homesteading (homesteading.com), Absolute Rights (absoluterights.com), How to Invest Your Money (howtoinvestyourmoney.com), You're So Pretty (youresopretty.com), Makeup Tutorials (makeuptutorials.com), Alfred Churchill (alfredchurchill.com), Homemade Recipes (homemaderecipes.com), and Gun Carrier (guncarrier.com).

12. Survival Life is one of Native Commerce's most visited website with between 500,000 and 1.5 million unique monthly visitors.[1] According to Native Commerce, Survival Life's goal is to "provid[e] a vast array of knowledge, tactics, and skills in the survival and preparedness fields, to any and all who wish to become more prepared for whatever may come."[2] Survival Life sells survival preparedness tools such as flashlights, knives, and backpacks from its online storefront.

---

[1] *Native Commerce | Community Built E-Commerce Brands*, Native Commerce, https://web.archive.org/web/20161220062615/https://nativecommerce.com/about-us/ (featuring an archived representation of Defendant's website as it appeared on December 20, 2016).
[2] *Id.*

13. Native Commerce also owns a website called Makeup Tutorials which is a "trusted outlet for women with a passion for all things makeup and beauty."[3] Makeup Tutorials publishes articles and heavily cross-promotes its Makeup Tutorial blog with its women's clothing e-commerce site.

14. Aside from blogs and e-commerce websites, Native Commerce owns and operates a website that purports to manage groups and associations in Washington DC under the name Associated Management Company.[4] Native Commerce claims that its Associated Management Company manages "industry groups, community associations and special interests" and offers "a robust collection of turn key benefits for our members and monetization solutions for those groups who want or need additional revenues."[5]

15. Indeed, the Association Management Company website claims to manage several of its own groups including, *inter alia*, Family Protection Association, the American Gun Association, and the American Beauty Association.[6]

16. Naturally, Native Commerce promotes its accompanying "associations" with its blogs and e-commerce sites. For instance, Native Commerce's Survival Life website heavily promotes the Family Protection Association, its Makeup Tutorials website promotes the American Beauty Association, its Gun Carrier website promotes the American Gun Association, and so forth.

---

[3] *Id*.
[4] *Association Management Company,* http://associationmanagementco.com/ (last visited March 17, 2017).
[5] *Id.*
[6] *Id.*

*Defendant Native Commerce Misleads Consumers to Enroll in a Monthly Subscription Plan*

17.     Unfortunately, consumers who complete a transaction on most of Native Commerce's websites are automatically and deceptively enrolled into a membership program for one of its associations and are charged a reoccurring monthly fee—all without the consumer's knowledge and consent.

18.     Native Commerce primarily accomplishes this by obtaining consumers' payment information after they makes a purchase from any of its e-commerce websites or by redeeming "free" items and paying only for the item's shipping and handling.

19.     When a consumer purchases a product from one of Native Commerce's e-commerce sites, he or she is taken to a checkout page. On the checkout page, Native Commerce represents the price of the item and shipping charges. Nothing on the checkout page indicates that Native Commerce will enroll the consumer into any reoccurring monthly membership or charge a reoccurring monthly fee. As shown in Figure 1, a consumer checking out a product on Survival Life (survivallife.com) sees only the price of the product, the shipping charges, and the total amount of the purchase.



(**Figure 1**.)

20. Native Commerce's checkout pages on its other websites are all substantially the same in that they all fail to disclose any reoccurring memberships fees. The checkout page only lists the product price, the shipping charges, and the total price for the purchase. *See* Figure 2.



(**Figure 2**, showing the checkout page on guncarrier.com.)

21.   Native Commerce uses a different checkout page when a consumer redeems a free item from one of its many websites. When Native Commerce offers these free items, it asks the consumer for his or her credit card information to pay either 1¢ for the item and/or shipping charges. Similar to the previous checkout page, Native Commerce only displays the price of the item (if any), the shipping charge, and the total. Again, Native commerce never discloses that it automatically enrolls consumers into one of its reoccurring memberships. *See* Figure 3.

(**Figure 3**, showing the checkout page for a "1¢" item on Defendant's survivallife.com website.)

22.     As shown in Figure 3, consumers who use this checkout page specifically agree to one of Native Commerce's associations (*e.g.*, Family Protection Association) to "charge [the consumer] for the order total" and nothing above and beyond the listed order total—especially not any reoccurring charges.

23.     Only after viewing his or her bank account statement, the consumer realizes that Native Commerce enrolled him or her into a reoccurring monthly membership to one of its associations. Native Commerce never discloses the existence of these charges anywhere on the checkout pages or anywhere on its various websites. And thus, consumers never agreed to Native Commerce's reoccurring charges.

## FACTS RELATING TO PLAINTIFF WHEELER

24.     On or around January 2016, Plaintiff James Wheeler visited Native Commerce's Survival Life (www.survivallife.com) website and purchased a lighter.

25.     Unbeknownst to Plaintiff Wheeler, Defendant enrolled him into a reoccurring monthly membership to one of its associations for $19.99 per month. Defendant charged Wheeler's bank account in the amount of $19.99 every month for a year.

26.     Plaintiff Wheeler did not consent or otherwise agree to these charges. Defendant failed to disclose the existence of these memberships and these reoccurring membership fees to Plaintiff during checkout.

## CLASS ALLEGATIONS

27.     **Class Definitions:** Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and (b)(3) on behalf of himself and a class and subclass of similarly situated individuals defined as follows:

> **Class**: All persons in the United States who (1) submitted payment information to Defendant; and (2) who were enrolled in one of Defendant's memberships without permission.
>
> **EFTA Subclass**: All person in the Class who had money deducted from their bank account for one of Defendant's memberships without permission.

The following people are excluded from the Class and the EFTA Subclass (collectively the "Classes" unless otherwise noted): (1) any Judge or Magistrate presiding over this action and the members of their family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

28.   **Numerosity**: The exact number of members of the Classes is unknown and is not available to Plaintiff at this time, but individual joinder in this case is impracticable. The Classes likely consist of tens of thousands of individuals. Members of the Classes can be easily identified through Defendant's records and/or Defendant's retail partners' records.

29.   **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include but are not limited to the following:

   a) Whether Defendant violated the Michigan Consumer Protection Act § 445.903, *et seq.*;

   b) Whether Defendant violated 15 U.S.C. § 1693e, *et seq.*; and

c) Whether Defendant's conduct constitutes fraudulent concealment and breach of contract.

30. **Adequate Representation**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Classes, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and members of the Classes sustained damages as a result of Defendant's uniform wrongful conduct toward Plaintiff and the Classes. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and they have the resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the other members of the Classes.

31. **Policies Generally Applicable to the Class**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes, and making final injunctive relief appropriate with respect to the Classes as a whole. Defendant's policies challenged herein apply and affect the members of the Classes uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the Classes as a whole, not on facts or law applicable only to Plaintiff.

32. **Superiority**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Classes is impracticable. The damages suffered by the individual members of the Classes will likely be small relative to the burden and

expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

## FIRST CAUSE OF ACTION
### Violation of the Michigan Consumer Protection Act § 445.903, *et seq.*
**(On Behalf of Plaintiff and the Class)**

33. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

34. Defendant's wrongful conduct, as described in this Complaint, constitutes unfair, unconscionable, or deceptive methods, acts or practices in violation of the Michigan Consumer Protection Act, M.C.L. § 445.903, *et seq*.

35. Defendant engages in "trade or commerce" as defined by M.C.L § 445.902 because it conducts business that provides goods and services primarily for personal, family, or household purposes.

36. Defendant violated § 445.903(s) because it failed to reveal a material fact that ultimately mislead and deceived consumers. Specifically, Defendant failed to disclose the existence of any reoccurring charges to consumers when they purchase a product from Defendant.

37.     Consumers could not have reasonably known about Defendant's reoccurring charges because they were concealed and never disclosed to consumers.

38.     These reoccurring charges are material because they are likely to influence a consumer's decision on whether to purchase a product from Defendant. Had Plaintiff and Class members known the actual price of Defendant's products, including the costs of additional (hidden) reoccurring charges, they would not have submitted their payment information to Defendant.

39.     Accordingly, Plaintiff and Class members have suffered harm in the form of money paid to Defendant.

40.     Plaintiff and Class members seek actual damages from Defendant's conduct pursuant to M.C.L. § 445.911(3), and an order enjoining Defendant from engaging in future unfair and unlawful practices pursuant to M.C.L. § 445.911(2), plus interest and attorneys' fees.

**SECOND CAUSE OF ACTION**
**Fraudulent Concealment**
**(On Behalf of Plaintiff and the Class)**

41.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

42.     Based on Defendant's omissions, Plaintiff and Class members reasonably expected that they could purchase items from Defendant's websites for the price displayed during the check out. Defendant concealed any further charges, such as any reoccurring charges described above.

43.     At all times, Defendant knew that it did not disclose to Plaintiff and Class members that they would be charged an additional reoccurring charge after purchasing products from its websites.

44. Indeed, the facts concealed from Plaintiff and Class members are material in that a reasonable consumer would consider them to be important in deciding to make a purchase (or enter into any transaction) on Defendant's websites. Had Plaintiff and Class members known the actual price of Defendant's product including the costs of additional (hidden) reoccurring charges, they would not have submitted their payment information.

45. Defendant concealed any additional costs and the true price of their products to induce Plaintiff and Class members to act and submit their payment information.

46. As a result, Plaintiff and Class members suffered actual damages in the form of money paid to Defendant.

### THIRD CAUSE OF ACTION
### Breach of Contract
### (On Behalf of Plaintiff and the Class)

47. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

48. Plaintiff and the Class members entered into a valid contract with Defendant to purchase goods from its website for the specified prices displayed during the checkout.

49. By charging Plaintiff and the Class members more than the agreed price and enrolling them into a reoccurring monthly membership, Defendant breached the contract.

50. As a result, Plaintiff and Class members sustained harm in the form of money paid to Defendant through reoccurring monthly payments for services that they never agreed to.

### FOURTH CAUSE OF ACTION
### Violation of Electronic Funds Transfer Act ("EFTA")
### 15 U.S.C. § 1693e
### (On Behalf of Plaintiff and the EFTA Subclass)

51. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52. Defendant initiated electronic fund transfers for unauthorized charges from Plaintiff's and the EFTA Class members' bank accounts without first obtaining written

authorization from them or providing them with a copy of such purported authorization. Therefore, Defendant violated 15 U.S.C. § 1693e.

53. Accordingly, Plaintiff and the EFTA Class members suffered damages and seek actual and statutory damages, as well as injunctive relief pursuant to § 1693m.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff James Wheeler, individually and on behalf of the Class and the EFTA Subclass, requests that the Court enter an order providing for the following relief:

A. Certify this case as a class action, appoint James Wheeler as the class representative, and appoint his counsel as Class Counsel;

B. Declare that Defendant's actions violate 15 U.S.C. § 1963e, the Michigan Consumer Protection Act § 445.903, *et seq.*, and constitute fraud by omission and breach of contract;

C. Award actual, statutory, and punitive damages;

D. Award injunctive as is necessary to protect the interests of the Classes;

E. Award Plaintiff and the Classes their reasonable litigation expenses and attorneys' fees;

F. Awarding Plaintiff and Classes pre- and post-judgment interest, to the extent allowable;

G. Award such other and further relief as equity and justice may require.

## JURY DEMAND

Plaintiff demands a trial by jury for all issues that can be so tried.

Respectfully submitted,

**JAMES WHEELER**, individually and on behalf of all other similarly situated,

By: /s/ Benjamin H. Richman
      One of Plaintiff's Attorneys

Benjamin H. Richman
brichman@edelson.com
EDELSON PC
350 North LaSalle Street, 13th Floor
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378

*Attorney for Plaintiff and the Putative Classes*

16